# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

LIPSCOMB UNIVERSITY,

        Plaintiff,        CIVIL NO. _____

    v.

THE TRAVELERS INDEMNITY COMPANY,

        Defendant.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Lipscomb University ("Lipscomb"), by and through its attorneys, brings this Complaint against Defendant, The Travelers Indemnity Company ("Travelers"), and alleges as follows:

## PRELIMINARY STATEMENT

1. Lipscomb is a faith-based, liberal arts college dedicated to challenging students academically, spiritually and as global community citizens. Its campus is in Nashville, Tennessee, and it has been serving students since 1891.

2. Numerous properties owned or controlled by Lipscomb were severely damaged by a hailstorm on March 25, 2021.

3. Lipscomb timely filed a claim with Travelers for the damage to its property (the "Claim").

4. Travelers sold Lipscomb a policy of insurance, Policy No. KTK-CMB-6N59395-1-20 (the "Policy"). Travelers did not dispute that the Claim was covered by the Policy.

5. Once the Claim was noticed, Travelers was obligated by its duty of good faith to Lipscomb under Tennessee law to promptly and fairly investigate and settle the Claim; however, Travelers did not abide by its duty. Instead of fairly valuing the claim, Travelers recklessly breached the terms of the Policy by egregiously undervaluing Lipscomb's damages, paying a meager fraction of Lipscomb's actual loss.

6. Travelers' breach forced Lipscomb to hire an independent adjuster, engage an independent engineering firm, and submit to a costly appraisal process with Travelers at Lipscomb's own expense.

7. Where Travelers' initial valuation of Lipscomb's damages amounted to just under $1.5 million, the appraisal process ultimately determined that the true cost to repair and replace Lipscomb's properties was over $<u>20 million</u>, more than <u>ten times Travelers' original valuation</u>. Had Lipscomb not sought to enforce its rights, Travelers would have enjoyed an eight-figure windfall against what it owed to Lipscomb as the true value of the Claim.

8. It took Lipscomb until June 27, 2024, more than *three years* after the damage occurred, to receive payments from Travelers that approached the real value of Lipscomb's property damages.

9. Furthermore, Lipscomb has incurred almost $3.5 million in additional expenses to date as a direct result of Travelers' breach of the Policy. Lipscomb demanded that Travelers pay these expenses to make Lipscomb whole pursuant to its obligations under the Policy and Tennessee law; however, Travelers has refused to pay.

10. Travelers is now liable to Lipscomb for compensatory damages under the Policy and Tennessee common law, consequential damages pursuant to Tennessee common law, prejudgment interest under Tennessee common law, punitive damages under Tennessee common

law because Travelers *recklessly* breached its Policy, and for statutory damages under Tennessee Code § 56-7-105 for Travelers' bad faith refusal to pay the Claim. Lipscomb files this Complaint to recover these damages.

11. Lipscomb's Complaint is timely filed, as tolling agreements between Lipscomb and Travelers extended all periods of limitation through February 28, 2025.

## JURISDICTION AND VENUE

12. This Court has exclusive jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), based upon diversity of citizenship in that: Plaintiff Lipscomb University is a nonprofit corporation organized under the laws of the State of Tennessee, with its principal place of business located at One University Park Drive, Nashville, TN 37204; Defendant Travelers Indemnity Company is a corporation organized under the laws of the State of Connecticut, with its principal place of business located at One Tower Square, Hartford, CT, 06183; and Plaintiff Lipscomb University claims damages in excess of the sum of $75,000.00.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because the events or omissions forming the bases of these claims occurred in this District.

## PARTIES

14. Plaintiff Lipscomb University is a nonprofit corporation organized under the laws of the State of Tennessee, with its principal place of business located at Lipscomb University, One University Park Drive, Nashville, TN 37204.

15. Defendant Travelers Indemnity Company is a corporation organized under the laws of the State of Connecticut, with its principal place of business located at One Tower Square, Hartford, CT 06183. Travelers is licensed to do business and is authorized to issue insurance

policies in Tennessee. Upon information and belief, Travelers operates as a subsidiary of The Travelers Companies, Inc.

## THE POLICY

16. Travelers sold Policy No. KTK-CMB-6N59395-1-20 to Lipscomb with an Issue Date of July 9, 2020, and a Policy Period of June 1, 2020–2021. Policy, Ex. A, at 1 (Declarations).

17. The Policy includes coverage for property damage to buildings with a policy limit of $325,000,000.

18. The Property Coverage Form provides that: "The Company will pay for direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss." *Id.* at 11 (§ A.).

19. The Property Coverage Form is modified by a "Replacement Cost" Endorsement which adds additional valuation provisions. The Replacement Cost Endorsement provides in the relevant part that:

> In the event of covered loss or damage, the Company will determine the value of Covered Property at replacement cost as of the time and place of loss, without deduction for depreciation, except as otherwise provided in this endorsement or as stipulated by any other endorsement(s) attached to this policy.
>
> . . .
>
> 2. The Company will not pay for any loss or damage on a replacement cost basis until the property is repaired or replaced . . . .
>
> 3. For property to which this replacement cost valuation applies, the Insured may make a claim for loss or damage on an actual cash value basis instead of on a replacement cost basis.
>
> . . .
>
> 5. In the event the Insured decides to repair or replace damaged or destroyed property, payment will include any reasonable and necessary architectural, engineering, consulting or supervisory fees related to the construction, repair or

replacement of the damaged or destroyed property. This will not increase the applicable Limits of Insurance.

*Id.* at 95 (§§ A.1–5).

20. The Replacement Cost Endorsement requires Travelers to pay either the Replacement Cost Value ("RCV") or Actual Cash Value ("ACV") of any covered property damage. *See id.* The RCV is the value of the property damage at the time the Covered Cause of Loss occurred, plus any increased cost of construction in the time it takes to repair or replace the property. *See id.* at 95 (§§ A.1–5) (Replacement Cost Endorsement), 17–18 (§ B.2.e.(1)(c)) ("Ordinance or Law Provision"). The ACV is the RCV less the depreciation of the properties and any increased cost of construction. *See id.*

21. The Policy also contains an "Appraisal" condition should Travelers and Lipscomb disagree about the value of the property:

> If the Company and the Insured disagree on the value of the property, the amount of net income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that a judge of a court having jurisdiction make the selection. The appraisers will state separately the value of the property, the amount of loss or the amount of net income and operating expense. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
>> a. Pay its chosen appraiser; and
>>
>> b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, the Company will still retain its right to deny the claim.

*Id.* at 86 (Policy Conditions, Additional Provisions, and Definitions Form § B.2.) (the "Appraisal Condition").

22. Lipscomb is required to "Cooperate with [Travelers] in the investigation or settlement of the claim." *Id.* at 87–88 (Policy Conditions, Additional Provisions, and Definitions

5

Form § B.3.a.(8)). Lipscomb has paid all premiums, provided prompt notice of the Claim, paid all deductibles, and otherwise timely performed all obligations, conditions, covenants, or prerequisites to coverage required of it under the Policy.

23. Conversely, Travelers has an ongoing duty to Lipscomb to promptly, and fairly, investigate and pay the Claim. *See id.*; *see also* Tenn. Code Ann. § 56-8-105 (West) (unfair claims practices by an insurer includes: "Failing to adopt and implement reasonable standards for the prompt investigation and settlement of claims arising under its policies;" and "[r]efusing to pay claims without conducting a reasonable investigation . . . .").

24. No exclusions, limitations, or exceptions bar coverage for the property damage caused by the hailstorm described in the Claim, nor do they apply to any consequential damages, punitive damage, or statutory damages that flow from Travelers' conduct in handling the Claim. *See* Policy at 22–29 (Property Coverage Form §§ D.–E.); 95–97 (Replacement Cost Endorsement § B.1.–13.).

## THE CLAIM

25. Numerous properties owned or controlled by Lipscomb were damaged by a hailstorm on March 25, 2021. The damage was severe and wide-ranging impacting structures, windows, roofs, electrical and gas connections, HVAC systems, air conditioners, heaters, and more across *dozens* of properties.

26. Don Kennedy Roofing ("Don Kennedy") performed an initial inspection of the damage on March 26, 2021. Don Kennedy performed a secondary inspection of additional buildings on April 13, 2021, contracting Phoenix Claims Consulting ("Phoenix") to inspect and analyze the damage.

27. Lipscomb timely notified its insurance broker, Arthur J. Gallagher, of a potential hail damage claim on April 9, 2021, and provided formal notice of the Claim on May 7, 2021.

28. The damage caused by the hailstorm was a Covered Cause of Loss under the Policy, Lipscomb's notice was timely, and the occurrence of the hailstorm coupled with timely notice triggered Travelers' duties under the Policy.

29. Travelers sent Envista Forensics (formerly Grecco Construction Consultants) and Rimkus Engineering as its representatives to perform an initial inspection of the hail damage on June 3–4, 2021.

30. Travelers' representatives chose to inspect only a small number of the damaged buildings. Travelers' representatives were further advised by Phoenix that there was significant damage that Phoenix had observed during its more comprehensive analysis of the damaged buildings in March and April. Upon information and belief, this information was disregarded.

31. Based on this inadequate analysis, Travelers adjusted Lipscomb's loss at $1,493,396.65, which was just a fraction of its actual loss. Travelers' line-item valuations almost uniformly reflected this practice of undervaluing the property damage. For instance, a July 23, 2021 roof damage report reflected an RCV of $126,737.80 and an ACV of $106,834.57, and Travelers' August 9, 2021 air conditioning damage report reflected an RCV of $148,704 and an ACV of $69,363. The true value of the damage to these properties was much greater.

32. Lipscomb hired Phoenix as a Public Adjuster as of September 8, 2021, to conduct an independent assessment of the damage. Phoenix retained GRK Engineering ("GRK") to conduct an additional inspection, a structural analysis of the damage, and destructive testing of roofing material to assess the hail damage.

33. Phoenix and GRK ultimately found evidence of over $8,700,000 in covered property damage to numerous campus buildings and other properties controlled by Lipscomb. Many of these were properties that Travelers had previously had the opportunity to investigate but chose not to investigate. Travelers nevertheless paid merely $1,493,396.65.

34. Travelers breached its duties to Lipscomb under the Policy through its failure to conduct a reasonable investigation, its egregious undervaluing of the hail damage, and its ultimate failure to pay the true value of the Claim.

35. Despite Travelers' breach, Lipscomb cooperated with Travelers throughout the investigation and disputed its undervaluation pursuant to the terms of the Policy. Lipscomb invoked the process described in the Appraisal Condition under the Policy on November 22, 2022.

36. Pursuant to the Appraisal Condition, a panel was convened consisting of Luke Bowman from Undisputed Consulting as Appraisal Umpire, Toby Johnson from Omega Building Consultants ("Omega") as Lipscomb's Appraiser, and Mike Whitford as Travelers' Appraiser (collectively, the "Appraisal Panel").

37. During March 18–21, 2024, almost three years after the hail damage, the Appraisal Panel inspected over 50 Lipscomb locations.

38. Upon information and belief, many of the locations inspected by the Appraisal Panel had not been previously inspected by Travelers.

39. The Appraisal Panel found in favor of Lipscomb and issued a Final Umpire Appraisal-Award on June 10, 2024, which was amended on August 12, 2024 (the "Appraisal Award"). The Appraisal Award reflected damages that were more than <u>ten times</u> Travelers' valuations:

8

| Travelers Payments Prior to Appraisal Award | Final Valuation (ACV) | Final Valuation (RCV) |
|---|---|---|
| $1,493,396.65 | $16,167,881.46 | $20,051,887.22 |

40. Only after the Appraisal Award was rendered did Travelers make meaningful payments to Lipscomb. Travelers has paid Lipscomb the ACV of $16,167,881 to date, but the Appraisal Award reflected only Lipscomb's losses due to *property damage*, not any reasonable and necessary fees incurred by Lipscomb, additional expenses that flowed from Travelers' breach of the Policy, or interest due Lipscomb.

## LIPSCOMB'S DAMAGES

41. Lipscomb has elected to repair and replace its property and, due to Travelers' breach of the same, Travelers must pay Lipscomb the difference between the RCV and its payments to date, plus "reasonable and necessary architectural, engineering, consulting, or supervisory fees" pursuant to the Replacement Cost Endorsement of the Policy.

42. Lipscomb has incurred substantial additional costs as a direct result of Travelers' breach of the Policy, including: (1) the sums charged to Lipscomb by Phoenix Claims as Public Adjuster for Lipscomb after October 17, 2021, in the amount of $1,446,109.33; (2) the inspections of GRK as contractor for Phoenix Claims in 2022, in the amount of $33,585.26; (3) the sums charged by Omega in the Appraisal process, in the amount of $1,210,621.33; (4) Lipscomb's share of the cost of Undisputed Consulting, the Umpire in the Appraisal process, in the amount of $142,026.73; and, (5) the increased costs to repair and replace property of $659,632.76, which reflects the difference between the ACV calculated as of June 10, 2024, and the ACV at the time of loss calculated as of August 12, 2024.

43. In addition, because Phoenix Claims is contractually entitled to 9% of any further recovery by Lipscomb, Travelers must pay an additional 9% of any final judgment against Travelers in this case.

44. Lipscomb has been deprived the use of the funds owed to it by Travelers, and is due prejudgment interest.

45. Lipscomb outlined its case and demanded that Travelers pay its costs by letter dated September 30, 2024. As specified in an email from Travelers on October 3, 2024, Travelers refused to pay Lipscomb's demand.

46. Lipscomb now brings this action to recover its compensatory damages, consequential damages, and prejudgment interest, as well as any punitive damages and statutory bad faith damages, owed to Lipscomb due to Travelers' egregious breach of the Policy.

## Count I

**Tennessee Common Law Breach of Contract – Compensatory Damages, Consequential Damages, Prejudgment Interest, and Punitive Damages**

47. Plaintiff Lipscomb repeats and realleges the allegations set forth in paragraphs 1 through 45 of this Complaint as if fully set forth herein.

48. The above-referenced Policy constitutes a valid and enforceable contract between Lipscomb and Travelers.

49. Lipscomb paid all premiums, provided prompt notice of the Claim, and otherwise timely performed all obligations, conditions, covenants, or prerequisites to coverage required of it under the Policy.

50. Pursuant to the terms of the Policy, Travelers owed Lipscomb a duty to promptly, and fairly, investigate and settle the Claim.

51. Despite agreeing that the Claim is covered by the Policy, Travelers has breached its obligations under the Policy by failing to promptly and fairly investigate and adjust the Claim, egregiously undervaluing Lipscomb's damages, and forcing Lipscomb to undertake a costly appraisal process.

**Compensatory Damages**

52. Travelers owes Lipscomb compensatory damages under the terms of the Policy and Tennessee law.

53. Because Lipscomb is electing to repair and/or replace its properties, Travelers must pay Lipscomb the RCV, not just the ACV, of the Appraisal Award. Due to Travelers' breach of the Policy, Travelers can no longer rely on the Replacement Cost Endorsement's deferral of RCV payments "until the property is repaired or replaced", and Travelers is liable to pay the RCV award of $20,051,887.22 immediately as the correct measure of Lipscomb's property damage. Because Travelers has to date paid Lipscomb $16,167,881 for the ACV, it owes Lipscomb at least the difference between the RCV award and the ACV, a total of $3,884,006.22.

54. In addition, Travelers also owes Lipscomb certain costs as "reasonable and necessary architectural, engineering, consulting, or supervisory fees" pursuant to the Replacement Cost Endorsement of the Policy.

55. Lipscomb incurred expenses from professionals related to the construction, repair, or replacement of the damage properties, and Travelers must pay these costs up to the limits of liability in the Policy. In particular, Travelers must pay (1) the sums charged to Lipscomb by Phoenix Claims as Public Adjuster for Lipscomb after October 17, 2021, in the amount of

11

$1,446,109.33 and (2) the inspections of GRK as contractor for Phoenix Claims in 2022, in the amount of $33,585.26.[1] These reasonable and necessary costs total $1,479,694.59.

56. Accordingly, Travelers is liable to Lipscomb for compensatory damages of $5,363,700.81.

**Consequential Damages**

57. Travelers owes Lipscomb consequential damages that directly resulted from its breach of the Policy pursuant to Tennessee law. *See, e.g.*, *Riad v. Erie Ins. Exch.*, 436 S.W.3d 256, 274 (Tenn. Ct. App. 2013).

58. As a direct and consequent result of Traveler's breach of its Policy, Lipscomb was forced to hire an independent adjuster, engage an independent engineering firm, and submit to a costly appraisal process with Travelers at Lipscomb's own expense. Accordingly, Travelers must pay (1) the sums charged to Lipscomb by Phoenix Claims as Public Adjuster for Lipscomb after October 17, 2021, in the amount of $1,446,109.33; (2) the inspections of GRK as contractor for Phoenix Claims in 2022, in the amount of $33,585.26; (3) the sums charged by Omega in the Appraisal process, in the amount of $1,210,621.33; (4) Lipscomb's share of the cost of Undisputed Consulting, the Umpire in the Appraisal process, in the amount of $142,026.73; and, (5) the increased costs to repair and replace property of $659,632.76, which reflects the difference between the ACV calculated as of June 10, 2024, and the ACV at the time of loss calculated as of August 12, 2024, and is attributable to Travelers' breach.[2] These costs total $3,491,975.41.

---

[1] Costs (1) and (2) also constitute consequential damages. Lipscomb does not seek to recover these costs twice but rather seeks to recover them in the alternative under either compensatory or consequential damage theories.

[2] Costs (1) and (2) also constitute compensatory damages. Lipscomb does not seek to recover these costs twice but rather seeks to recover them in the alternative under either compensatory or consequential damage theories.

59. Accordingly, Travelers is liable to Lipscomb for consequential damages of $3,491,975.41.

60. In addition, because Phoenix Claims is contractually entitled to 9% of any further recovery by Lipscomb, Travelers must pay an additional 9% of any final judgment against Travelers had in this case.

**Prejudgment Interest**

61. Tennessee common law also allows for the recovery of prejudgment interest as a matter of equity and in an amount of the trial judge's discretion. *Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d 78, 81. Prejudgment interest may be awarded at any simple interest rate of up to 10%. *See id.*, Tenn. Code Ann. § 47-14-123.

62. Lipscomb has suffered millions of dollars of uncompensated expenses as a direct result of Traveler's breach of the Policy. Lipscomb has been denied the use of those funds since its cost began to accrue. Thus, Travelers also owe Lipscomb pre-judgment interest from *at the latest* the very first payment to Phoenix Claims on October 17, 2021, that will accrue on October 17, 2021, through the date of final judgment in this action.

63. Accordingly, Travelers is liable to Lipscomb for prejudgment interest in an amount to be determined at trial.

**Punitive Damages**

64. Tennessee common law allows for the recovery of punitive damages for reckless breach of contract. *See Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 364 (6th Cir. 2018).

65. Travelers' breach was reckless. Lipscomb timely notified Travelers of the Claim and gave Travelers every opportunity to investigate, adjust, and pay the Claim. Rather than promptly adjusting and approving Lipscomb's Claim, Travelers undertook an investigation that

13

was wholly inadequate, resulting in a valuation that benefited Travelers at the expense of Lipscomb. After two years, Travelers' payments amounted to less than 10% of the real ACV of the property damage. Travelers was aware of its duties to Lipscomb, the inadequacy of its investigation, and the standard of care it was obligated to maintain as an insurance company. And Lipscomb itself repeatedly tried to raise the issue of damages with Travelers over the course of its investigation. Travelers disregarded its obligations, refused to revise its gross undervaluation of the Claim, and forced Lipscomb to incur millions of dollars in additional costs to prove the real measure of its damages.

66. Accordingly, Travelers is liable to Lipscomb for punitive damages in an amount to be determined at trial.

## Count II

### Statutory Bad Faith – Tenn. Code Ann. § 56-7-105

67. Plaintiff Lipscomb repeats and realleges the allegations set forth in paragraphs 1 through 65 of this Complaint as if fully set forth herein.

68. Tennessee law requires insurance companies to pay a loss within sixty (60) days after a demand has been made by the holder of the policy, and an insurer's bad faith refusal to pay may result in the insurer being held liable for a sum not exceed twenty-five percent (25%) on the liability for the loss measured by the additional expense, loss, and injury including attorneys fees caused by such failure to pay. Tenn. Code Ann. § 56-7-105.

69. The Policy constitutes a valid and enforceable contract between Lipscomb and Travelers.

70. Lipscomb paid all premiums, provided prompt notice of the Claim, paid all deductibles, and otherwise timely performed all obligations, conditions, covenants, or prerequisites to coverage required of it under the Policy.

71. "In order to prevail on a § 56-7-105 bad faith claim, a plaintiff must prove four elements: '(1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making his demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) the refusal to pay must not have been in good faith." *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 360–61 (6th Cir. 2018) (quoting *Palmer v. Nationwide Mut. Fire Ins. Co.*, 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986)).

72. The Claim was due and payable under the terms of the Policy after it was timely noticed to Travelers on May 7, 2021, and Travelers has acknowledged that the hailstorm was covered by the Policy.

73. Lipscomb made numerous and repeated demands to Travelers for payment. Most recently, by letter dated September 30, 2024, Lipscomb demanded that Travelers pay its costs from the Claim. By email dated October 3, 2024, Travelers refused to pay Lipscomb's demand.

74. Travelers' refusal to pay was not made in good faith. Travelers was aware of its duties to Lipscomb, the inadequacy of its investigation, and the standard of care it was obligated to maintain as an insurance company. And Lipscomb itself repeatedly tried to raise the issue of damages with Travelers over the course of its investigation. Travelers disregarded its obligations, refused to revise its gross undervaluation of the Claim, and forced and will force Lipscomb to incur millions of dollars in additional expenses, loss, and injury as a result of Travelers' conduct.

75. Accordingly, Lipscomb is entitled to statutory penalties for Travelers' bad faith refusal to pay including "the loss and interest thereon" and "a sum not exceeding twenty-five percent (25%) on the liability for the loss", Tenn. Code Ann. § 56-7-105, to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lipscomb respectfully prays for relief as follows:

a) On Count I, Plaintiff requests that this Court award: $5,363,700.81 in compensatory damages; $3,491,975.41 in consequential damages plus an amount equal to 9% of any final judgment; prejudgment interest in an amount to be proven at trial; and punitive damages in an amount to be proven at trial.

b) On Count II, Plaintiff Lipscomb requests that this Court award statutory penalties for Travelers' bad faith refusal to pay including "the loss and interest thereon" and "a sum not exceed twenty-five percent (25%)", to be proven at trial.

## JURY DEMAND

Plaintiff Lipscomb demands a jury on all issues contained in this Complaint so triable.

Dated: February 28, 2025

Respectfully submitted,

/s/ John F. Romero
Jeffery S. Roberts, #20263
Casey W. Elrod, #35995
John F. Romero, #38841
JEFFERY S. ROBERTS & ASSOC., PLLC
213 Rep. John Lewis Way North, Suite 300
Nashville, Tennessee 37219
Phone: (615) 425-4400
Fax: (615) 425-4401
jeff@middletninjury.com
casey@middletninjury.com
john@middletninjury.com
*Counsel for Plaintiff*